Please be seated. This is Wesley Cook v. David Bell. Christie Hatcher Boland is here for the appellants. Robert Goldman is here for the appellate cook. And Ms. Hatcher Boland, you may begin your argument. Christie Hatcher Boland Good morning, and may it please the court. My name is Christie Hatcher Boland, and with me at council table is Rich Berry, and we represent the court to reverse the denial of summary judgment based upon qualified immunity to these two officers. Qualified immunity is the issue before the court, and as this court explained in the case of Lee Snook, qualified immunity protects an officer unless, at the time of the officer's supposedly wrongful conduct, the law was already established at such a high degree that every objectively reasonable officer in this case would be on notice that what he was doing was clearly unlawful given the circumstances. We first have to decide whether or not we are able to entertain this appeal based on whether or not we have jurisdiction. And so we recently decided in English v. the city of Gainesville that when the defendants are denied summary judgment due to a genuine issue of material fact regarding qualified immunity, we lack jurisdiction to review. So are there different recollections about whether these officers not, whether they announced, whether they saw the gun before they shot him, whether he opened the door before they began shooting? If that's, if they're genuine issues of fact about those sorts of facts, why do we have jurisdiction to entertain this appeal? Well, Your Honor, for one, I think we have to look at these, these are separate officers with separate claims against them. As for Bell, there's no dispute of fact whatsoever. The district court found it was undisputed that due to his position, he was not in a And the undisputed testimony was that he did not even see Cook until after the shooting was over. So as to Bell, there's no dispute of fact whatsoever. He wasn't in a position. So it's only a legal question before the court as to Bell specifically. And that is whether or not an officer who is not in a position to see not only the officer using force, but the subject of the force. But Bell's claim is only failure to intervene. That's the claim against him. Correct. But as to Dunn, do you concede, though, that there are issues of fact that are in dispute? Because really, it's what happened when he turned the corner. There are issues of fact. However, when we move for summary judgment, we can see the biggest, the biggest issues of fact was, were, the two issues were, did he announce? And the second one was, you know, did he give a warning? But even Bell testified that he didn't hear him announce. Well, Bell testified actually that he heard him knock and announce Lakeland Police. What Bell said he did not hear was the warning. And that is where they diverged. And that was in Dunn's statement. As you probably recall, Dunn has passed away. There's no testimony. For purposes of summary judgment, we basically conceded that. And as this court explained in Moniz, where the position is that even on plaintiff's facts, so no warning, okay, and no announcement, although Bell said he heard him. If you concede that, that basically it gets rid of the facts and you can look at the legal question because, again, it's on the facts as prescribed by the plaintiff. Do the actions violate clearly established law? Well, but with respect to Bell, because Bell is a question of law. Correct. What was the, how was he in a position to intervene, or do you believe he was not in a position to intervene? He was not in a position to intervene because his undisputed statement in his sworn deposition testimony, and nobody contradicted this, not Cook, not any other witness. He said, basically, I heard Paul yell, Gunn. I was in a position where I couldn't see the front door. I could not see whoever answered the front door. I had to get around the SUV in the driveway. And that actually, shots were fired. He goes to get around the SUV. As the second, around the time the second shots, second and final round are fired, he yells shots fired. At that time he then gets around the SUV, and at that time he sees Cook. Cook has been shot. He's still standing in the doorway with a gun in his hand. That may be what the better view of the evidence is, or even the only view of the evidence. The problem I see for you is that the district court specifically said that there was a tribal issue of fact about whether Bell could, quote, see and evaluate the threat the officer using force has perceived. So whether or not that's right, we don't, I think, have jurisdiction to review whether the district court was correct that there's a tribal issue of fact on that issue. But the district court actually found, and this was on page three of the order, that he was not in a position to see any of these things that Gunn saw, these observations of Cook. He said he could see the use of force. He could basically visually see Dunn and auditorily hear that the guns were fired. He did not make a finding that it was a question as to whether he could see. Rather, the court said that there was a question of fact as to whether he could have intervened between the first and second shots. But the undisputed testimony, and the court did not find that Bell's inability to see Cook was disputed. That's not a disputed fact. The court did not find a disputed fact. There's no disputed fact on the record. He just basically said you were physically present. You could see the use of force and hear the use of force. But the court did not make a finding that he could ever actually see. You're right about that. But what about the fact that he did say we don't know whether he could intervene or not? Isn't that a factual question? No. Whether there's a duty to intervene is actually a legal question. Not whether there's a duty, but whether he could have intervened between the first and second shot. Well, the question is, though, I mean, granted, yes, he could have basically assumed the use of force was excessive, which is basically the strict liability position that both the district court and plaintiffs argue, that even if you can't see the perceived threat, that you are supposed to assume it's excessive. But there's no duty to intervene in a use of force. It's only a duty to intervene in a use of excessive force. So unless you could see... Don't we have to... You first have to decide whether Officer Dunn used excessive force before determining whether or not Bell had a duty to intervene, right? Not necessarily. Not in this particular case. And the reason why is because... Go ahead. Go ahead. Bell's duty to intervene does not rise and fall in the use of excessive force in this particular case because he could not evaluate, because he couldn't see Cook, whether or not the use of force was appropriate. And you only have a duty to intervene in excessive force, a constitutional violation, not a duty to intervene in just the use of force. For example, in cases like Hadley v. Gutierrez, it was clear that the officer who punched the guy who was already in handcuffs, that was excessive. But the court said it's a different case as to the officer who was with him because basically in that case it was a single punch and he couldn't anticipate it. But it's the same thing. You don't have the ability to see or to evaluate whether or not the force is over. This happened very rapidly in a matter of seconds, and there was a clear deposition testimony. Did the second shot occur, the second and final round of shots occur, before you saw Cook? And the answer was yes. I did not see him until after the shooting was over. And at that time we saw him still standing in the doorway, but he had been shot, and he still had a gun in his hand. So because Cook, I'm sorry, because Bell, was not in a position to evaluate the use of force, he didn't know if he had a duty to intervene. And for all he knew, because he could not see Cook, Cook could have been standing there with a gun pointed at Dunn. He didn't know that, though, until after the use of force was over. This doesn't have anything to do with the case, but we don't have Dunn's deposition, right? Correct. Why is Dunn's deposition inadmissible? Well, we only have, by the way, we don't have a deposition. He passed away in a motorcycle accident seven days after the lawsuit was served upon him. What we have is a statement. The district court ruled that we could not get his sworn statement in, and we did not rely upon it, principally because there is this dispute as to whether or not there was a warning. But we concede, in our motion for summary judgment, we said even if he didn't warn him, even if he shot him before the glass, in cases such as Powell v. Snook, we basically said that it was not clearly established that you always have to give a warning, but it is clearly established that an officer who has a reasonable belief that his life in peril has the ability and the right to use deadly force. May I ask you a question? I know it's a recorded interview for Dunn. Was it recorded like just an audio recording, or was it a video recording? It was just an audio recording. Okay. All right. I'll reserve the remainder of my time. Thank you very much. Thank you, Counsel. Mr. Goldman? Your Honor, may it please the Court. I think we have to recreate the scene a little if we could. Basically, where the bench of the court is is where Mr. Cook's residence is. The officers go, and they bang on the door. They then retreat to what Judge Barber called an ambush position, which is roughly my distance to the Court. And from that . . . It's like a tunnel, right? And they're behind basically the wall to the garage. Yes. You have to stand by the podium. If not, we can't hear you. They're recording. Thank you. Your Honor, if we were to take Judge Grant's end of the table, the garage comes towards me. I'm kind of curious more about Bill. Yes. Because it's a failure to intervene. Doesn't the case law suggest that you have a duty to intervene when there has been a constitutional violation? You don't have a duty to intervene until then? Yes. So how did he have the ability to intervene when he couldn't see what was happening? As Judge Barber said at page 10 of his opinion, he said that . . . And what I was getting at with the fact, Dunn is right next to Bell, and Bell is right next to Dunn. And so they're within the distance. The only argument that the appellants have here is that Dunn says, from that 12-foot distance, I could not see Mr. Cook. Now . . . Excuse me, Mr. Bell. I'm sorry. Yes. Mr. Bell said that I could not see him. Right, because wasn't he basically facing Dunn's back? Dunn was the one that was peering over, and Mr. Bell was behind him. And in essence, they're wedged between the back of the SUV and the garage wall. Well, they're formally wedged between the car and the garage. Yes, Bell says that I could not see Mr. Cook. But I believe that's a credibility finding. It's a credibility finding because 12 feet away, you know, where they went to the ambushed position, the jury certainly could say, we don't believe that. Two police officers are fleeing, and they're going to a position in order to watch Cook, and one officer is not looking at him. I don't find that credibility. But it's a tunnel position. That's what they teach you. You don't get in front of the front door when it's a tunnel. So they're away from the tunnel. I'm in the tunnel right now. I go to appellant's desk. I'm out of the tunnel. I'm out of the tunnel, and I'm done, and I'm Bell, and we're looking. Jury can decide this. You went back there for a reason, not just to sit there and do nothing, that we don't believe you when you say that you didn't see what's happening in front of you 12 feet away. That's a credibility finding, not as a matter of law. And if we were to say that in a case like this, then any police officer at any time in a civil rights case can say, when I was standing there and that decedent was getting kicked or followed, I wasn't looking. If Dunn acted appropriately. I'm sorry? If Dunn acted appropriately and did not use excessive force, then there was no need to intervene. Yes, I'll address that. Don't we have to decide first whether or not he used excessive force before we determine whether or not Bell had a duty to intervene? No, I believe, Your Honor, both determinations are determinations based on the facts. In order to decide whether or not Bell did or did not have the ability to intervene, and what the case law says is, were you in a position? You're with me. You're with me, though, that there's no duty to intervene if there's no excessive force by Dunn, right? Right, but in this case, and if you want me to get into it, I'll explain to you why there's no question at a summary judgment stage that there's excessive force. You have a gentleman who's in his residence. Yeah, this is assuming we have jurisdiction. Assuming you have jurisdiction. You have a former law enforcement, federal law enforcement from Pennsylvania, moves down to Florida to be with his girlfriend and become a police officer. They have a nonviolent argument. She leaves. She asks for help in merely getting her backpack and her cell phone, and she intends to go back home the next day. That's the setting, and so Bell and Dunn go there. And according to a neighbor, Dunn immediately, within two steps out of his vehicle, pulls his service revolver and approaches Max. That's Mr. McCarty, and Bell follows. So we have evidence that he pulled his gun immediately. We have evidence, therefore, that Bell right next to him saw him do that. They then go up to the door, and it's nighttime, and they bang on the door. And after they bang on the door, they flee to the ambush position. Cook, in his house with a licensed firearm and former law enforcement, hears the banging. During his sleep, he grabs his lawful gun to go to the door where there's windows to look out the window to see who's banging on his door at nighttime. When two volleys, there wasn't a constant one, two or three rounds go through the glass, and then there's a pause, and then the next volley. Shot in the eye, shot in the chest, shot in the pelvis, grazed on the side. All the police officers, supervisors, et cetera, when we're talking about reasonable officer and what they would do, testify their depositions. So they took them through that. If you heard a knock on your door, if you had a gun, is it lawful? We all know that with the Second Amendment, et cetera, it's lawful to have a gun. It's your house. You have the right to protect yourself and the house. There's unexplained banging at your front door, and nobody's there when you look out the glass. And all these police officers admitted, the supervisors and the investigators, that what Cook did was 100 percent lawful, 100 percent lawful. So now we have the police officers arguing when a citizen of the United States with a lawful right to have a gun to go to his door, to be inquisitive on who's banging on his door at nighttime, and takes a gun, which is pointed to the ground as admitted by Dunn, and then he shot at nine times through the glass window, and he never exited the house, and all the blood is in the house. That's excessive force. When no force is necessary, the use of any force is excessive. So what does, was Bell's deposition taken? Bell's deposition, Your Honor? I'm sorry? Bell. Bell in the intervention? Bell? Okay. Bell's deposition was taken in 2021 or 2022. Okay. And he says... What did he say? Yes. What did he say? What he saw. Bell says that when he got to that position, he did not see Mr. Cook from where he was standing. He was behind Officer Dunn. That's what he says. But the case law says if you have the ability to intervene, you must intervene. And so at the time, it's just, Barber says... So Bell, did Bell say that Dunn looked at him, turned to the front door and yelled, gun, and drew his weapon, and that's when Dunn fired one round of shots? That's what Bell says. Okay. That's not... That's what Bell said. So we've got issues of fact here. We have issues of fact. And so we don't have jurisdiction. If we got issues of fact, because if you look at what Bell said, it's different than what Cook says. Yes. This is really... Bell yelled out, shots fired, on his radio. And when Bell yelled shots fired, he heard another round of shots. Yes. And what Judge Barber says, who's weighed into these facts, whether a jury would find that Bell had the opportunity to intervene prior to the first volley of shots, that's a question for the jury to resolve. Moreover, because there was a distinct lapse in time between the first and second volleys, there's a clear question of fact as to whether Bell could have intervened prior to the second volley. And it all comes down to facts, which all goes to jurisdiction. And there's no question that if the facts are looked up in the light most favorable to Mr. Cook, he did nothing which warranted him to be shot while he's in his house behind a closed door, answering a knock that the police made to the door. And even Bell testified in his deposition that, you know, he would do the same thing. That's not unreasonable. That's not unreasonable. It's your home. And all of them, I ask them this question, isn't a knock on the door an invitation to come to the door? And they all said yes. So you're saying we do have jurisdiction? No, we don't have. No, sorry. Okay. I don't know what I said to give you that impression, but no, Your Honor. And we raised the jurisdictional question in our brief in the first section. It's really fact-intensive. And Judge Barber, who had more time in this court to look deeply into these facts, found that there are sufficient facts for the jury. And even if you were to conclude for some reason that the first volley, that he couldn't have intervened because he didn't know when he was going to pull the trigger, Judge Barber says, yeah, but you've got a second volley. You've got a second. What's the undisputed? I mean, Cook was intoxicated, and really he was very forthright in his testimony in terms of what he remembered and didn't remember. So the only testimony is really Bell's testimony, which is that he had to run around the car to get, I guess, because Dunn was still here. Yes. And so he had to run around the car. And by the time he ran around the car, the second volley had already happened. Well, it was happening at the time, but he took no efforts after. If he was surprised or whatever with the first volley, he's standing right next to him. He has the opportunity to intervene at that point in time, and he did not. How was he going to intervene? What exactly was he going to do? Grab him? Paul, what are you doing? Anything like that. This is a— But he couldn't see what was happening at the door. That's what he says. And I think—I've done a lot of criminal law, federal prosecutor, et cetera. If a defendant in a civil case or in a criminal case says, oh, when I shot that person, I thought it was a dog. It wasn't a human. I'd go to the jury. Is that based on the facts that you're within 12 feet and you have the ability to see because somebody says that it didn't happen in a civil rights case because a police officer says, I saw nothing? Does that mean he's off the hook? If that is the case, when we have a strong case to show that the facts themselves are issues of credibility, Bell saying that, what are we doing for the future of cases these days in civil rights cases if we say all a police officer has to do is say— and in most of these cases or a lot of these cases, the victim of a civil rights violation is dead and can never counter what a police officer says. So if a police officer is able to say, I'm 12 feet away. Oh, yeah, there was light and nothing was clouding my ability to see, but I sneezed, I coughed, I did anything, and I didn't see it. That doesn't go to the jury. That's what it comes down to. That's a question of fact. That's the province of a jury in our system. I think it's that clear. Would the Court like me to focus on anything else? I think we have your argument, Mr. Goldman. Thank you. And Ms. Hatcher-Bolin, you have reserved some time for rebuttal. Thank you, Your Honors. I think we need to separate two things, both for jurisdiction as well as the merits of the case. These are two different claims. The claim against Bell is failure to intervene. There are no disputed facts as to that. I keep saying it's a credibility decision. It's a credibility issue. It goes to the jury. You've got to have something to counter Bell's statement. There's nothing to counter Bell's statement. As a matter of fact, the District Court found it was undisputed that due to his position, Bell was not in a position to see these things, these things being what Dunn saw. And his uncontroverted deposition testimonies, I didn't see cook until after the second and final rounds were shot. Now, going back to Judge Wilson's issue, it is true that, yes, if there's no excessive force, then there's no failure to intervene. A lot of those cases get decided along those lines. But if there is excessive force, I mean, it's possible based on this record or based on the testimony that would be presented at trial that there was a duty to intervene. Well, the question is, if there's excessive force, did you have a duty to intervene, which requires that you have the opportunity to intervene? And this court, we filed this with our supplemental authority a few weeks ago, in Hunter v. Leeds v. City of Gainesville. There were multiple officers who had come to the scene, and only one of the officers had actually shot the guy. The guy actually claimed everybody, all the officers present had shot him, but the forensic evidence showed that the bullets came from one gun, and it was the officer who shot. So the court then looked at, well, was there a failure to intervene? And they say, well, that's true. Isn't there a neighbor? One of Cook's neighbors, she testified in her deposition that the officers approached Cook's home with weapons drawn. Well, actually, she testified she only saw one officer, and she did not see actually up close to the house what happened at the house. It's possible. We don't know. It's all done? And that, Belle, was that what she said? She didn't know. She didn't know how many officers were there. She didn't know which officers she saw. And it's possible that a gun was drawn, that it was put back in its holster. We don't know. What we do know is that there's no dispute that Belle and the district court itself found it. But then when it finds it says that there's a question of fact, there's nothing like there's no facts backing that up. Well, somebody else said he could have seen something. Nobody did. Cook didn't counter that Belle could not see, nor did any other witness. So they're things that are decided separately. But in Hunter, the court said, while Jackson was present at the time of the shooting, he claims in his affidavit that he had a limited view of the carport where Hunter, the subject of the use of force, was parked. From where he was standing besides the house, he saw Cook fire his weapon at Hunter but could not see where Hunter was or what he was doing at the time of the shooting. Although Jackson witnessed the use of force against Hunter, he could not have assessed at the time whether that use of force was excessive. In other words, because he could not observe Hunter, and in particular whether Hunter pointed a gun at him or otherwise or threatened Kirk, he could not know whether Kirk's use of force was justified or unlawful, so he cannot be held liable for failure to intervene. What's your response to the argument that, given that in these cases we often have a decedent rather than a living victim, that an officer could say, I sneezed, so I was within view of this, but I sneezed, I looked away, so I just didn't see it? I think under those circumstances there probably would be a question of fact because, you know, whether you just looked away for a second, and also those are factually intensive, but we have here the only issue of fact, or there is no issue of fact, there's only an undisputed finding as to Bell that he couldn't see what was going on. The court didn't find any other disputes of fact, even though they say, well, there's a dispute of fact as to whether he could intervene, but the question is whether the duty arose. Did he have an opportunity to observe, cook, and see whether or not he actually presented a threat? Bell was never in that position, and the record is uncontroverted, so there's clearly a dispute as to Bell whatsoever. You're running out of time, but let's set aside Bell and talk about Dunn. It seems to me that if we look at the facts in the light most favorable to Dunn, he was standing there, as your brief repeatedly emphasizes, naked, pointing a gun downward inside his house. In what world under that set of facts can officers just show up and shoot him? Well, we also have to look at the context, and the context here is they were called basically because there was some dispute between Ms. Wood, and she basically requested assistance because she did not feel comfortable going back into her own home to retrieve her items. So she did that. She warned the officers that he had guns. We have cases like Powell v. Snook where essentially, and Young v. Borders, I do understand that that's an unpublished opinion, but I think the facts line up here to where they went to the wrong house or they mistook somebody, and because they were there on a call where they thought there might be violence and the person had a gun, even though they had an opportunity to warn and an opportunity, the court said, look, we're not going to fashion a hard and fast rule that says you have to give a warning in every incident. You know, this happened. But in those cases, there was at least an argument, I think I recall, that there was something besides the person standing there with a gun pointed downward inside a closed door looking out a window. I mean, that would be a pretty big rule to say if the police know that you have a gun and you threaten someone, not even with that gun, you just threaten them, then they can, because of that, come to your house and shoot you through the door. I don't think we want that to be the rule. Well, I don't think we want that to be the rule, but I think you have to look at the entire context. But also it's a question of clearly established law. And we have cases such as Powell v. Snook that basically said it's not clearly established, that it's not clearly established that you have a duty to refrain from using the force. But what we do know is that an officer who has a reasonable belief, even if mistaken, because the qualified immunity analysis does allow for mistaken judgments. So unless every officer, every objectively reasonable officer in that position would have believed that, no, there's no threat and I don't have a right to use force, then. . . Yeah, but in Powell v. Snook, the person started to raise the gun. That is what makes it different. Once someone raises a gun, then the situation has changed. But when someone is standing there where no one even disputes that the gun was raised, I appreciate, frankly, the officer's apparent honesty about the fact that the gun wasn't raised. But if someone is not even approaching a threatening posture, I don't see why, if we accept that set of facts is true, that the officers can shoot them. Well, in cases such as Garzinski v. Bradshaw and Greer v. Ivey, this court recognized that less is required for an officer to reasonably perceive an imminent threat when the suspect is armed with a gun rather than a knife. And in other cases, this court has basically said that, look, you don't have to be pointing the gun for there to be the threat of imminent harm. In Carr v. Tangelo, there was no gun, but they heard someone close their sunglasses  and they said that was enough for there to be enough of a perception, a reasonable perception, that they were in danger. And the name's escaping me, but you have the case where the guy had a gun, but he was running away from the officers. And they basically said, well, he was running away from the officers, but they still could have reasonably perceived that at any moment he could have basically turned around and shot them. So unless every reasonable, objectively reasonable officer in the position of Dunn would not believe that they could use deadly force to counter the threat, if every reasonable officer did not perceive Cook as being a threat, then qualified immunity. If an officer decides that someone is a threat because they heard that they threatened someone else before and they have a gun, then they can just shoot them? It depends on, I think I need to flesh that out a little bit. I mean, if they've threatened with a gun and they're there with a gun, then I think that it's not clearly established that that would be, that the use of deadly force would be prohibited. And I think it does depend on the factual situation. Can I ask you for a question? What was the citation to Hunter? Hunter, I've actually got the case right here. I'm sorry. It is 941 F. Lee D. 1265. And my time is up, but I thank you, Your Honors, for your time. Thank you. Thank you, Counsel. The next case is Sprint.